LUIS ROSADO ROSADO ET AL., Plaintiffs and Petitioners, *v.* FLUOR INTERNATIONAL, S. A., Defendant and Respondent.

No. 11680. Resubmitted May 22, 1958.—Decided September 30, 1959.

*José L. Feliú Pesquera* and *Vicente Géigel Polanco* for petitioners. *McConnell, Valdés & Kelly* and *A. Castro Fernández*, for respondent.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Fluor International, S.A. was building, as contractor, an oil refinery for the Caribbean Refining Company in the district of Bayamón. About 560 workmen were employed in this job. On January 31, 1955, the Fluor International, S.A. posted in a visible place, on the outside of the workshops where the job was being accomplished, the following notice:

*"To All Fluor Employees*

"Due to the continuous increase in theft of materials from this project the following will apply:

"1. Any employees caught stealing or taking part in stealing any article or articles from the refinery premises will not only be immediately discharged, but may be prosecuted to the full extent of the laws of Puerto Rico.

"2. A periodic shake-down will be made at our gate of all items carried from the jobsite, with the assistance of Police Officers. You are not to leave this job with any company tools or equipment, regardless of reason.

"Possession of any company materials when leaving jobsite will be considered stealing and above action will be taken.

"3. This stealing is being done by you or your fellow workman.

"We hereby insist on your assistance in putting an end to this shameful and disgraceful crime wave in our job.

"(s) J. N. Prospal"[1]

---

[1] The notice was originally drafted in English and translated into Spanish.

Petitioners, 156 employees of the Fluor International, S.A., filed suit against said company claiming damages, on the grounds that the transcribed notice falsely charged them with the offense of stealing or theft and that it had been published in dishonor, discredit, and contempt of said plaintiffs.

Defendant answered denying certain facts, accepting others, and presenting several special defenses, among others, that the complaint does not state facts sufficient for a cause of action. It alleged that about the date on which the notice was published, its personnel was constantly changing due to the fact that some employees quit their jobs and new ones were contracted; that due to the exorbitant quantity of construction materials, tools, clothing apparel, etc., which disappeared from the project within a period of ten months, defendant, in good faith, without malice, and for the sole purpose of protecting its interests, intended to post the notice as originally drafted in the English language, but by mistake of the employee who translated it, it was published in Spanish as copied in the complaint; that the notice was addressed collectively to all the 561 employees of the defendant corporation, that is, to the general class to which plaintiffs belonged; that in the Spanish version, the notice charged all the plaintiffs collectively with all the employees as a general class, with theft, but without said charge being malicious or with the knowledge that none of the employees had committed the offense charged; that said notice does not refer to nor is directed towards any individual nor to any particular natural or juridical person; that according to the notice, the defendant does not charge any of the plaintiffs in particular, nor any of its 561 employees with the offense; that said notice is addressed to a very wide and numerous group or community, composed of 561 persons, and as a question of law it cannot be said that any particular plaintiff has been prejudiced.

Subsequently defendant moved for summary judgment dismissing the complaint on the grounds that there did not exist any real controversy as to any material fact. Its motion was accompanied by an affidavit of Mr. Harley R. McCollum, Personnel Manager of said defendant. In that statement, Mr. Collum explains that about January 31, 1955, defendant had 561 employees; that during the months of July 1, 1954 to February 1, 1955, the number of defendant's employees varied considerably from month to month, and that during the months of January and February, 1955, said number of employees varied from day to day.

Later, plaintiffs moved for summary judgment granting them the compensation claimed. The motion was accompanied by affidavits of Luis Rosado Rosado, Rafael Rey González, and Antonio Rosa Negrón.

In brief, Rosado Rosado explains in his statement that he is one of the plaintiffs; that about January 31, 1955 defendant posted the notice copied in the complaint in several public places of the workshops operating there; that said notice was posted therein for several days visibly and publicly and accessible to all who entered the refinery workshops; that a number of people who entered the refinery read said notice, among others, employees of García Comercial, workmen looking for a job, relatives of the employees, and government officials.

Rafael Rey testifies that on February 2, 1955, he visited the oil refinery under construction in Bayamón by the defendant; that while he was talking with workman Florencio Figueroa in front of the carpentry workshop, he saw two notices on the wall of one of the small houses; that he read one published in Spanish and signed by an American; that said notice made reference to thefts committed in the refinery, stating therein that those thefts had been committed by the employees themselves; that the notice was posted in such manner that any person approaching the refinery works could read it.

The facts in Antonio Rosa Negrón's affidavit are more or less similar to those reported by Rafael Rey as to the publicity of the notice and its contents.

After the parties testified, the court a quo rendered summary judgment dismissing the complaint with the costs. The court held that the libelous language used in the notice posted on the workshop by the defendant was applicable in general to its 561 employees and that plaintiffs by way of "colloquium" could not apply said language to themselves individually.

In truth, what the trial court decided, in our view, erroneously, was that plaintiffs did not have sufficient cause of action against the defendant as it dealt with libel aimed at a very large class or group. The dismissal of the complaint did not lie on that ground, neither did the summary judgment. Let us see why.

Pursuant to the afore-mentioned allegations and affidavits, there is no real controversy in the case on the following facts: (1) all the plaintiffs were employees of the defendant in the construction of the oil refinery on the date on which said defendant published the notice copied in the complaint; (2) the notice was addressed to all the employees of the defendant in said job; (3) about the date on which the defendant published the notice, it used the services of 561 employees in the job; (4) the number of employees of the defendant varied from month to month and from day to day; (5) the notice published was libelous per se as it charged all the employees of the defendant in the refinery job with theft; (6) the aforementioned notice was read by several persons who visited the job; (7) construction materials, tools, clothing attire, and two motor vehicles, all valued at $50,000 and $70,000 had disappeared from the job.

However, there is still an essential fact at issue, to wit: that the defamatory charge made in general to the group of employees of the defendant, was applicable to the plaintiffs

individually and, therefore, that it was made in dishonor, discredit, and contempt of said plaintiffs individually.

In Puerto Rico, the act which authorizes the civil action of damages for libel (32 L.P.R.A. § 3142) reads thus:

"Libel is the malicious defamation of a person made public by writing, printing, sign, picture, representation, effigy, or other mechanical mode of publication tending to subject him to public hatred or contempt, or to deprive him of the benefit of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt or dishonor upon him, . . ."

The contention of the defendant-respondent to the effect that this statute authorizes the action for damages only when libel is directed against *one person* and not when it is directed against *many persons* is devoid of merit and we shall not stop to discuss it here.

There are innumerable judicial decisions and a vast amount of juridical commentaries on the problem of the so called "group libel." [2]

A public defamation can be aimed at a person even when his name is not mentioned. In such case, plaintiff has to allege and prove, by way of "colloquium" that the defamatory

---

[2] See Annotation: Right of Individual Member of Class or Group Referred to in a Defamatory Publication to Maintain Action for Libel or Slander, 97 A.L.R. 281; *Libel and Slander*, 33 Am. Jur., § 26, 1161; Prosser on Torts, Hornbook Ed., § 91, 792–3; Readings in Torts, Harper, vol. 2, 1093; *Group Libel and Free Speech*, 39 Minn. L. Rev. 167 (1954–1955); *Group Libel Laws; Abortive Efforts to Combat Hate Propaganda*, 61 Yale L.J., 252, 253 (1952); Martin L. Newell, The Law of Slander and Libel, (3d ed., 1914), 326–329, 468; 28 N.Y.U.L. Rev., 220 (1953); *Defamation of a Group*, 21 Notre Dame Law 591 (1945); *Individual Recovery Defamation of a Group*, 15 Ohio St. L.J. 273 (1954); *Group Libel*, 41 Calif. L. Rev., 144 (1953); 24 So. Cal. L. Rev.( 213 (1951); 24 Notre Dame Law, 591 (1949); *Libel and Slander: Right of a Member of a Defamed Group to Recover in a Civil Action*, 29 Calif. L. Rev., 83 (1940); *Liability for Defamation of a Group*, 34 Column. L. Rev., 1322 (1934); David Riesman, *Democracy and Defamation: Control of Group Libel*, 42 Column. L. Rev. 727 (1942); Joseph Tanenhous, *Group Libel*, 35 Cornell L. Q., 261, 263–267, 269–271 (1950); Irving Wilner, *The Civil Liability Aspects of Defamation Directed Against a Collectivity,*

charge refers to him. Two or more persons can be defamed in the same publication. What happens is that serious difficulties arise when the defamatory words are aimed at a large group or class rather than at an individual. In such cases, plaintiff has to prove he is a member of the defamed group or class and he also has to show a reasonable personal application of the words to himself. Prosser on Torts (2d ed.), p. 583; 2 Harper, Readings in Torts, 1095. Even the most liberal rule allows individual claim in group libel if plaintiff proves that the defamation was directed against him. *Wisner* v. *Nichols*, 143 N.W. 1020; *Fenstermaker* v. *Tribune Pub. Co.*, 43 Pac. 112; *Wofford* v. *Meeks*, 30 So. 625; *Watts-Wagner Co.* v. *General Motors Corp.*, 64 F. Supp. 506; *Service Parking Corporation* v. *Washington Times Co.*, 92 F.2d 502. Also see, *Liability for Defamation of a Group*, 34 Column. L. Rev. 1322.

To support their respective theories, both parties cite J. Tanenhous' article published in vol. 35 of the Cornell Law Quarterly, 261, where the author, making a study of all the authorities, concludes from a group of leading cases that certain principles have evolved which may be categorically stated as follows:

---

90 U.Pa. L. Rev., 414, 415; 33 Ore. L. Rev., 68 (1953); *Montgomery Ward & Co., Inc. et al.* v. *Harland*, 38 So. 2d 771; *Hoyos* v. *Thornton*, 18 N.Y.S.2d 121; *Gross* v. *Cantor*, 200 N.E. 592; *Marr* v. *Putnam*, 246 P.2d 509; *Levert* v. *Daily States Pub. Co.*, 49 So. 206; *Tobin* v. *Alfred M. Best Co.*, 105 N.Y.S. 294; *Adams* v. *Carrington Pub. Co.*, 160 Fed. 986; *Goldsborough* v. *Orem & Johnson*, 64 A.2d 36; *Weston* v. *Commercial Advertising Assoc.*, 77 N.E. 660; *Wofford* v. *Meeks*, 30 So. 625; *Fowler* v. *Curtis Publishing Co.*, 182 F.2d 377; *Watts-Wagner Co.* v. *General Motors Corp.*, 64 F. Supp. 506; *Latimer* v. *Chicago Daily News*, 71 N.E.2d 553; *Hospital Care Corp.* v. *Commercial Casualty Ins. Co.*, 9. S.E.2d 796; *Noral* v. *Hearst Publications*, 104 P.2d 860; *Service Parking Corp.* v. *Washington Times Co.*, 92 F.2d 502; *Nieman-Marcus Co.* v. *Lart*, 107 F. Supp. 96; *Oma* v. *Hillman Periodicals*, 281 App. Div. (N. Y.) 240; *Blodworth* v. *Times Pub. Co.*, 193 S.W. 527; *Wisner* v. *Nichols*, 143 N. W. 1020; *Hyatt* v. *Lindner*, 63 So. 241; *Watson* v. *Detroit Journal Co.*, 107 N.W. 81; *Blaser* v. *Krattiger*, 195 Pac. 359; *Barr* v. *Providence Tel. Pub. Co.*, 60 Atl. 835.

A. Defamation of a large group gives rise to no civil action on the part of an individual member of the group unless he can show special application of the defamatory matter to himself.

B. Defamation of a small group gives rise to civil action on the part of each individual member of the group,

    1. if the defamatory language applies to each and every member as an individual and not solely to the group as a collectivity or

    2. if the group is so small that the language of necessity applies to each and every member.

C. Defamation of a part of a group, whether large or small, gives rise to no civil action on the part of an individual member unless he is sufficiently identified to permit an action under A, or the part small enough to allow an action under B.

The problem is rather one of identification. It is essential for plaintiff to prove that he is sufficiently identified as an individual by the libelous matter whether the group be large or small.

If we analyze the notice published by the defendant in this case, we find that: (1) said notice was aimed at *all* the employees of the defendant in the oil refinery project in Bayamón, that is, at the 561 workmen it had employed in said project. The notice states that: "Due to the continuous increase in theft of materials from this project. . ." ("This project" is the oil refinery in Bayamón which was the location for the small houses on whose walls the notice was posted); (2) the notice stresses that: "This stealing is being done by you." "*You*" are all the employees of the defendant in the oil refinery project in Bayamón. Plaintiffs are among those "you".

The defamatory charge was thus aimed at the special and definite group of employees of the defendant in the aforementioned Bayamón project and not to all the employees in general as a class, without specific definition of who they are and where they work.

Defendant, in answer to the complaint, admitted that the notice in its Spanish version charged all plaintiffs with theft, although it clarifies that said charge was brought upon plaintiffs together with all the employees collectively and as a general class. In the relevant part, said answer reads thus: "From paragraph 6 of the complaint, defendant admits that it charged with theft all the plaintiffs jointly with all the employees collectively and as a general class . . ."

Under these circumstances we believe that plaintiffs had, at least, the right to go to trial and prove that the libelous notice was applicable to all individually. See: 1 Harper & James, The Law of Torts, § 5.7, pp. 366 to 370; Prosser on Torts (2d ed.), pp. 578 to 584.

The summary judgment entered by the Superior Court, Bayamón Part, shall be reversed and the case remanded for further proceedings not incompatible with this opinion.