LUIS ROSADO ROSADO ET AL., demandantes y recurrentes, *v.* FLUOR INTERNATIONAL, S.A., demandada y recurida.

Número 11680.
*Reasignado:* 22 de mayo de 1958. *Resuelto:* 30 de septiembre de 1959.

*José L. Feliú Pesquera* y *Vicente Géigel Polanco,* abogados de los
recurentes; *McConnell, Valdés & Kelly* y *A. Castro Fer-*
*nández,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión
del Tribunal.

La Flour International, S. A., estaba construyendo, como
contratista, una refinería de petróleo en la jurisdicción de
Bayamón, Puerto Rico, para la Caribbean Refining Company.
En dicha obra utilizaba los servicios de unos 560 empleados
más o menos. El día 31 de enero de 1955 la Fluor Inter-
national, S. A., fijó en el exterior de sus talleres donde reali-
zaba la obra, y en sitio visible, el siguiente aviso:

*"A Todos los Empleados de Fluor*

"Debido al continuo aumento en robos de materiales en este
proyecto regirán las siguientes normas:

"1. Cualquier empleado que sea sorprendido robando o to-
mando parte en el robo de cualquier artículo o artículos de la
refinería, no solamente será despedido sino que podrá ser acu-
sado de robo ante las autoridades judiciales de Puerto Rico.

"2. Una inspección periódica de todos los artículos que salgan
del proyecto será llevada a cabo en el portón con la ayuda de
oficiales policíacos.

"Ustedes no pueden salir del proyecto llevando consigo material o herramientas que pertenezcan a la Compañía, no importa la razón que tengan para ello.

"El que se lleven ustedes material perteneciente a la Compañía al salir del proyecto será considerado como robo; y será juzgado como tal.

"3. Estos robos han sido hechos por ustedes.

"Insistimos en que pongan ustedes de su parte para poner fin a estos actos bochornosos y denigrantes que están ocurriendo en nuestro proyecto.

"(Firmado) J. N. Prospal" [1]

Los aquí recurrentes, 156 empleados de la Fluor International, S. A., demandaron a dicha compañía en reclamación de daños y perjuicios, fundando su demanda en que el transcrito aviso les imputaba falsamente la comisión de un delito de robo o hurto y que había sido publicado en deshonor, descrédito y menosprecio de dichos demandantes.

La demandada contestó negando algunos hechos, aceptando otros e interponiendo varias defensas especiales, entre otras, la de que la demanda no aduce hechos constitutivos de causa de acción. Alegó que para la fecha en que se publicó el aviso, su personal cambiaba constantemente ya que

---

[1] El texto original de este aviso fue redactado en inglés por el señor Prospal, y es como sigue:

*To All Fluor Employees*

"Due to the continuous increase in theft of materials from this project the following will apply:

"1. Any employees caught stealing or taking part in stealing any article or articles from the refinery premises will not only be immediately discharged, but may be prosecuted to the full extent of the laws of Puerto Rico.

"2. A periodic shake-down will be made at our gate of all items carried from the jobsite, with the assistance of Police Officers. You are not to leave this job with any company tools or equipment, regardless of reason.

"Possession of any company materials when leaving jobsite will be considered stealing and above action will be taken.

"3. This stealing is being done by you or your fellow workman.

"We hereby insist on your assistance in putting an end to this shameful and disgraceful crime wave in our job.

"(s) J. N. Prospal"

se iban algunos empleados y se contrataban nuevos; que debido a las exorbitantes cantidades de materiales de construcción, herramientas, artículos de vestir, etc., que desaparecieron del proyecto en un período de unos diez meses, la demandada, de buena fe, sin malicia y con el único fin de proteger sus intereses, intentó fijar el aviso en la forma en que aparece en su original en el idioma inglés, pero que por error del empleado que lo tradujo fue que se publicó en la forma en español según aparece de la demanda; que el aviso estaba dirigido a todos los 561 empleados de la corporación demandada, colectivamente, o sea, a la clase en general a que pertenecían los demandantes; que en su versión en español el aviso imputó a todos los demandantes conjuntamente con todos los empleados colectivamente, y como una clase en general, el delito de hurto, pero sin que dicha imputación fuera maliciosa y a sabiendas de que ninguno de sus empleados había cometido el delito imputado; que dicho aviso no hace referencia ni está dirigido a ningún individuo ni a ninguna persona natural o jurídica determinada; que del aviso se desprende que la demandada no ha imputado la comisión de un delito a ninguno de los demandantes en particular, ni a ninguno de los 561 empleados de ella; que dicho aviso está dirigido a una clase o colectividad muy amplia y numerosa, compuesta de 561 personas, y que como cuestión de derecho no puede decirse que algún demandante en particular haya sufrido daños.

Posteriormente la demandada solicitó que se dictara sentencia sumaria a su favor desestimando la demanda en vista de que no había controversia real en cuanto a ningún hecho material. Acompañó a su solicitud una declaración jurada del señor Harley R. McCollum, Gerente de Personal de dicha demandada. En esa declaración expone el señor McCollum que para enero 31 de 1955 la demandada tenía 561 empleados; que durante los meses de julio primero de 1954 a febrero primero de 1955 el número de empleados de la demandada

varió considerablemente, mes por mes, y que durante los meses de enero y febrero de 1955 dicho número de empleados varió día por día.

Más tarde la parte demandante solicitó a su vez que se dictara sentencia sumaria a su favor concediendo la indemnización reclamada. A su solicitud acompañó declaraciones juradas de Luis Rosado Rosado, Rafael Rey González y Antonio Rosa Negrón.

Rosado Rosado expone en su declaración, en síntesis, que es uno de los demandantes; que para el 31 de enero de 1955 la demandada fijó en varios sitios públicos de los talleres que allí operaban, el aviso copiado en la demanda; que ese aviso estuvo fijado durante varios días en forma visible y pública y al acceso de todo el que entrara en los talleres de la refinería; que numerosas personas que entraron en la refinería leyeron el mencionado aviso, entre otras, empleados de la firma García Comercial, obreros y trabajadores que acudían en busca de trabajo, familiares de los empleados y funcionarios del gobierno.

Rafael Rey declara que el día 2 de febrero de 1955 visitó la refinería de petróleo que estaba construyendo la demandada en Bayamón; que mientras conversaba con el obrero Florencio Figueroa frente al taller de carpintería vió en la pared de una caseta dos avisos; que leyó uno de ellos redactado en español y firmado por un americano; que dicho impreso hacía referencia a robos cometidos en la refinería, diciéndose allí que habían cometido esos robos los mismos empleados; que el aviso estaba fijado en tal forma que podía leerlo cualquier persona que se allegara a las obras de la refinería.

En la declaración jurada de Antonio Rosa Negrón se relatan más o menos los mismos hechos declarados por Rafael Rey en cuanto a la publicidad del aviso y su contenido.

Después de oir a las partes, el tribunal a quo dictó sentencia sumaria declarando sin lugar la demanda con las costas. Sostuvo dicho tribunal que el lenguaje libeloso usado

en el aviso fijado por la demandada en sus talleres era aplicable en general al grupo de sus 561 empleados y que los demandantes no podían, por vía de "colloquium", hacer aplicable dicho lenguaje a ellos individualmente.

En verdad lo que el tribunal sentenciador resolvió, a nuestro juicio erróneamente, fue que los demandantes carecían de causa de acción en contra de la demandada porque se trataba de un libelo dirigido contra una clase o grupo muy grande. No procedía desestimar la demanda por ese fundamento ni tampoco procedía una sentencia sumaria. Veamos por qué.

De acuerdo con las alegaciones y las declaraciones juradas antes reseñadas, no existe en este caso controversia real sobre los siguientes hechos: (1) Todos los demandantes eran empleados de la demandada en la construcción de la refinería de petróleo para la fecha en que dicha demandada publicó el aviso copiado en la demanda; (2) El aviso iba dirigido a todos los empleados de la demandada en dicha obra; (3) Para la fecha en que publicó el aviso la demandada utilizaba en la obra 561 empleados; (4) El número de empleados de la demandada variaba de mes en mes y de día en día; (5) El aviso publicado era libeloso per se ya que el mismo imputaba a todos los empleados de la demandada en la obra de la refinería el delito de hurto; (6) El referido aviso fue leído por algunas personas que visitaron la obra; (7) De la obra se habían desaparecido materiales de construcción, herramientas, prendas de vestir y dos vehículos de motor, valorado todo entre $50,000 y $70,000.

Queda, sin embargo, en controversia un hecho esencial, a saber: que la imputación infamatoria hecha en general al grupo de empleados de la demandada, era de aplicación a los demandantes individualmente y, por tanto, que fue hecha en deshonor, descrédito y menosprecio de dichos demandantes individualmente.

La ley que en Puerto Rico autoriza la acción civil de daños por libelo (32 L.P.R.A. sec. 3142) dispone:

"Se entiende por libelo la difamación maliciosa que públicamente se hace en contra de una persona, por escrito, impreso, signo, retrato, figura, efigie u otro medio mecánico de publicación, tendente a exponer a dicha persona al odio del pueblo o a su desprecio, o a privarle del beneficio de la confianza pública, y trato social, o a perjudicarle en sus negocios; o de otro modo desacreditarle, menospreciarle o deshonrarle, ... "

Carece de todo mérito, y no nos detendremos a discutirla, la contención de la parte demandada-recurrida al efecto de que este estatuto autoriza el ejercicio de la acción de daños solamente cuando la difamación se hace en contra de *una persona* y que no la autoriza cuando se hace en contra de *muchas personas.*

Son innumerables las decisiones judiciales y es extensísima la glosa jurídica en torno al problema de la llamada "difamación de grupo". (²)

Una publicación difamatoria puede ser hecha contra una persona aunque no se le mencione por su nombre. En tal caso corresponde al demandante el peso de alegar y probar, por vía de "colloquium", que la imputación difamatoria se refiere a él. Dos o más personas pueden ser difamadas en

---

(²) Véanse *Annotation: Right of Individual Member of Class or Group Referred to in a Defamatory Publication to Maintain Action for Libel or Slander,* 97 A.L.R. 281; 33 Am. Jur., *Libel and Slander,* sec. 26, pág. 1161; Prosser, *Torts,* Hornbook ed., sec. 91, págs. 792-3; *Readings in Torts,* Harper, Vol. 2, pág. 1093; *Group Libel and Free Speech,* 39 Minn. L. Rev. 167 (1954-1955); *Group Libel Laws: Abortive Efforts to Combat Hate Propaganda,* 61 Yale L. J. 252, 253 (1952); *The Law of Slander and Libel,* by Martin L. Newell, 3d ed. (1914), págs. 326-329, 468; 28 N.Y.U.L. Rev. 220 (1953); *Defamation of a group,* 21 Notre Dame Law., 591 (1945); *Individual Recovery Defamation of a Group,* 15 Ohio St. L. J. 273 (1954); *Group Libel,* 41 Calif. L. Rev. 144 (1953); 24 So. Cal. L. Rev. 213 (1951); 24 Notre Dame Law., 591 (1949); *Libel and Slander: Right of a Member of a Defamed Group to Recover in a Civil Action,* 29 Calif. L. Rev. 83 (1940); *Liability for Defamation of a Group,* 34 Colum. L. Rev. 1322 (1934); *Democracy and Defamation: Control of Group Libel,* David Riesman, 42 Colum. L. Rev. 727 (1942); *Group Libel,* Joseph Tanehous, 35 Cornell L. Q. 261, 263-267, 269-271 (1950); *The Civil Liability Aspects of*

la misma publicación. Lo que ocurre es que surgen serias dificultades cuando las palabras difamatorias van dirigidas contra un grupo grande o una clase en vez de dirigirse a un individuo. En tales casos el demandante debe demostrar que él es un miembro del grupo o de la clase difamada y, además, debe establecer alguna razonable aplicación personal de las palabras a él mismo. Prosser, *Torts* (2d ed.), pág. 583; 2 Harper, *Readings in Torts*, 1095. La regla más liberal permite la reclamación individual en un libelo de grupo siempre que el demandante pruebe que la difamación iba dirigida contra él. *Wisner* v. *Nichols*, 143 N.W. 1020; *Fenstermaker* v. *Tribune Pub. Co.*, 43 Pac. 112; *Wofford* v. *Meeks*, 30 So. 625; *Watts-Wagner Co.* v. *General Motors Corp.*, 64 F. Supp. 506; *Service Parking Corporation* v. *Washington Times Co.*, 92 F.2d 502. Véase además, *Liability for Defamation of a Group*, 34 Colum. L. Rev. 1322.

Ambas partes citan en apoyo de sus respectivas teorías el artículo de J. Tanenhous publicado en el Tomo 35 de Cornell L. Quarterly, pág. 261, donde el autor, haciendo un recuento de la jurisprudencia, concluye que de un grupo de casos importantes se han desarrollado ciertos principios, que pueden establecerse categóricamente así:

*Defamation Directed Against a Collectivity*, Irving Wilner, 90 U. Pa. L. Rev. 414, 415; 33 Ore. L. Rev. 68 (1953); *Montgomery Ward & Co., Inc., et al.* v. *Harland*, 38 So.2d 771; *De Hoyos* v. *Thornton*, 18 N.Y.S.2d 121; *Gross* v. *Cantor*, 200 N.E. 592; *Marr v. Putnam*, 246 P.2d 509; *Levert* v. *Daily States Pub. Co.*, 49 So. 206; *Tobin* v. *Alfred M. Best Co.*, 105 N.Y.S. 294; *Adams* v. *Carrington Pub. Co.*, 160 Fed. 986; *Goldsborough* v. *Orem & Johnson*, 64 A.2d 36; *Weston* v. *Commercial Advertising Assoc.*, 77 N.E. 660; *Wofford* v. *Meeks*, 30 So. 625; *Fowler* v. *Curtis Publishing Co.*, 182 F.2d 377; *Watts-Wagner Co.* v. *General Motors Corp.*, 64 F. Supp. 506; *Latimer* v. *Chicago Daily News*, 71 N.E.2d 553; *Hospital Care Corp.* v. *Commercial Casualty Ins. Co.*, 9 S.E.2d 796; *Noral* v. *Hearst Publications*, 104 P.2d 860; *Service Parking Corporation* v. *Washington Times Co.*, 92 F.2d 502; *Nieman-Marcus Co.* v. *Lart*, 107 F. Supp. 96; *Oma* v. *Hillman Periodicals*, 281 App. Div. (N. Y.) 240; *Bloadworth* v. *Times Pub. Co.*, 193 S.W. 527; *Wisner* v. *Nichols*, 143 N.W. 1020; *Hyatt* v. *Lindner*, 63 So. 241; *Watson* v. *Detroit Journal Co.*, 107 N.W. 81; *Blaser* v. *Krattiger*, 195 Pac. 359; *Barr* v. *Providence Tel. Pub. Co.*, 60 Atl. 835.

A. La difamación de un grupo grande no da base para una acción civil por parte de. un miembro individual del grupo, a menos que él pueda demostrar especial aplicación de la materia difamatoria a sí mismo.

B. La difamación de un grupo pequeño da base a la acción por parte de cada miembro individual del grupo:

1. Si el lenguaje difamatorio se aplica a todos y cada uno de los miembros como individuos y no meramente al grupo como una colectividad, o

2. Si el grupo es tan pequeño que el lenguaje por necesidad se aplica a todos y cada uno de los miembros.

C. La difamación de una parte del grupo, ya fuere grande o pequeño, no da margen a ninguna acción civil de parte de un miembro individual, a menos que él esté lo suficientemente identificado para que proceda una acción bajo la letra (A), o la parte sea tan pequeña para proceder una acción bajo la letra (B).

El problema es más bien uno de identificación. Lo esencial es que, ya se trate de un grupo grande o de un grupo pequeño, el demandante quede, o pueda demostrar que queda suficientemente identificado individualmente por la materia libelosa.

■ Si analizamos el aviso publicado por la demandada en este caso, encontramos que: (1) dicho aviso iba dirigido a *todos* los empleados de la demandada en el proyecto de la refinería de petróleo en Bayamón, o sea, a los 561 trabajadores que ella empleaba en ese proyecto. El aviso dice: "Debido al continuo aumento en robo de materiales en este proyecto . . ." ("este proyecto" es el de la refinería de petróleo en Bayamón donde estaban ubicadas las casetas sobre cuyas paredes se fijó el aviso); (2) Subraya el aviso que "Estos robos han sido cometidos por ustedes". *"Ustedes"* son todos los empleados de la demandada en el proyecto de la refinería de petróleo en Bayamón. Entre esos *"ustedes"* se encuentran los demandantes.

La imputación difamatoria iba dirigida, pues, al grupo especial y definido de los empleados de la demandada en el referido proyecto de Bayamón y no a todos sus empleados en

general como una clase, sin definición específica de quiénes son y dónde trabajan.

En su contestación a la demanda, la demandada admitió que el aviso en su versión en español imputó a todos los demandantes el delito de hurto, aunque aclara que dicha imputación la hizo a los demandantes conjuntamente con todos los empleados, colectivamente y como una clase en general. En la parte pertinente dicha contestación lee: "De el párrafo 6 de la demanda, admite la demandada que imputó a todos los demandantes conjuntamente con todos los empleados colectivamente y con una clase en general, el delito de hurto . . . "

Bajo estas circunstancias creemos que los demandantes tenían, por lo menos, el derecho de ir a juicio y establecer que el aviso libeloso era de aplicación a ellos individualmente. Véanse: I Harper & James, *The Law of Torts*, sec. 5.7, págs. 366 a 370; Prosser, *Torts* (2d ed.), págs. 578 a 584.

*Debe revocarse la sentencia sumaria dictada por la Sala de Bayamón del Tribunal Superior y devolverse el caso para ulteriores procedimientos no incompatibles con esta opinión.*