MONTGOMERY WARD & Co. et al. *v*. HARLAND.

In Banc. Feb. 14, 1949.

(38 So. (2d) 771)

Stuart S. Ball, David L. Dickson and Jackson, Young, Daniel & Mitchell, for appellant.

384

**Butler & Snow, Barnett, Barnett & Jones,** for appellees.

388

**McGehee, C. J.**

This is the second appearance of this case on appeal. It is a companion case to that of Montgomery Ward &

Company et al. v. Skinner, 200 Miss. 44, 25 So. (2d) 572; and Montgomery Ward & Company et al. v. Blakely, 200 Miss. 81, 25 So. (2d) 585. The decision on the first appeal of the instant case is reported in 201 Miss. 467, 29 So. (2d) 267, styled Montgomery Ward & Co. et al. v. Higgins. The plaintiff, who is the Mrs. Ralph Higgins mentioned in the opinion in the case of Montgomery Ward & Company v. Skinner, supra, has now become Mrs. June Harland, the plaintiff herein.

The present suit is predicated upon the same facts in every essential particular as those set forth in the opinion in the Skinner case. The same question of law as to non-liability of the defendant Montgomery Ward and Company and its assistant manager, R. H. Burnie, is involved in the case now before us as was involved in the Skinner and Blakely cases on the point that the words spoken of a group of three persons, charging that one of them has been guilty of a wrongful act, but which does not charge that all are guilty and does not single out the plaintiff, are not actionable.

Moreover, the same question was presented and fully briefed by the appellants on the former appeal of the instant case, and the Court, in its opinion, stated that "the views of the several members of the Court upon the matters heretofore assigned as error are consistently maintained." This observation in the opinion has reference to "an alleged slander by the appellants against all three of said plaintiffs, whereby it was charged that 'one of the three' had 'trifled with the money' of appellant (Montgomery Ward and Company) 'with ill intentions.' "

We are therefore of the opinion that the contention of non-liability on the ground that the charge was made in the alternative has now been foreclosed, not only by the law of this case as announced on the former appeal, but by the decisions in the Skinner and Blakely cases, supra. An affirmance by an evenly divided Court is a binding judicial precedent unless and until the same

is overruled, and a majority of the Judges are of the opinion that the two companion cases were correctly decided. Robertson v. Mississippi Valley Co., 120 Miss. 159, 81 So. 799; Hughes v. Gully, State Tax Collector, 170 Miss. 425, 153 So. 528; Jefferson Standard Life Ins. Co. et al. v. Ham, 178 Miss. 838, 173 So. 672; Brock, State Bank Commissioner v. Adler, 180 Miss. 118, 177 So. 523; Mississippi State Tax Commission v. Brown, 188 Miss. 483, 193 So. 794, 195 So. 465, 127 A. L. R. 919, 933.

On the former appeal of the present case, however, we reversed and remanded the cause for the reason that the trial court excluded testimony to the effect that the co-defendant Burnie had acted on information that the hidden check had been given to the plaintiff herein, or one of the plaintiffs in the former suits, and not to one of the two remaining employees in that department. On remand of the instant case, the trial court permitted the introduction of such testimony, and it disclosed that the check in the sum of $5,10 found underneath a plaque at the cash register, along with the $30.00 in currency, had been signed by a customer, Mrs. Fremon Jones, who, prior to the alleged slanderous charges against the three salesladies, had, in response to an inquiry in that behalf, informed Mr. Catchings that she gave the check for purchases in the toy department where the three ladies in question were employed, and that Mr. Catchings had furnished the co-defendant, Burnie, with such information, and that for this reason the said Burnie was justified in eliminating Mrs. Darby who worked in the furniture department, and Mr. Catchings who worked in the appliance department on the same floor, when trying to fix the responsibility for the placing of the money and the check under the plaque at the cash register.

 We thought that the defendants were entitled to make such proof on the question of good faith for whatever it should be worth in the consideration of the case by the jury, but we did not say, nor intend to hold, that such additional proof would bar a recovery on a new

trial. The question still remained as to whether or not the defendant Burnie was justified in slandering *at least* two innocent ladies in the toy department in the presence and hearing of the customers in the store, even if he had actually known that one or the other of the three of them had been guilty of the alleged dishonest act of trifling with the Company's money with ill intentions, or of a mere act of carelessness.

But it is contended by the appellants that there is no proof in the record on this appeal that any of the customers heard the remarks complained of, which are alleged to have been made by the defendant Burnie. However, a witness for the plaintiff testified in substance that some of the customers were within three or four feet of the defendant Burnie, when these accusations were made, and "when they (the customers) would be at the register getting their change and their bundles", and this witness was specifically questioned as follows: "Q. Could any of them hear what he was saying?" "A. I am sure they could have." Thereupon an objection was made to the answer "unless she knows." The objection was sustained, unless she knew, and she then answered, "They stopped, and looked, and listened."

In the opinion on the former appeal of this case, the observation was made by the Court that "Much testimony was adduced to show the personal reactions of the plaintiff to the accusations, the loss incident to her discharge, and the humiliation incident to her own re-publication of the charges. It is true that much of this was properly excluded by the trial judge, but only after its impact upon the jury. It is assumed that upon a second trial the risk of a residual prejudice will be avoided by disallowing its introduction." And it is now contended that the trial court permitted the introduction of evidence as to these same matters on the second trial of this case, and to the prejudice of the defendants. In view of this statement in the former opinion, it was error to have permitted the introduction of some of the testimony of

this nature on the second trial. ██ ██ However, such testimony could have only been influential with the jury in arriving at the amount of damages to be assessed. But if its introduction was erroneously permitted, and if it influenced the jury in assessing the damages at the sum of $15,000, we are of the opinion that by ordering a remittitur entered so as to reduce the judgment to the sum of $7,500, as was done in the two companion cases of Skinner and Blakely, such action will amply cure any harm that may have been done by this testimony in regard to the measure of damages.

██ ██ As a new point made on this appeal, it is now contended that the occasion on which the slanderous accusations were alleged to have been made by the defendant Burnie was one of absolute privilege under the State Unemployment Compensation Act, Chapter 295, Laws of 1940, which provides among other things that "All letters, reports, communications, or any other matters either oral or written, from the employer or employee to each other or to the (Unemployment) commission or any of its agents, representatives or employees which shall have been written, sent, delivered, or made in connection with the requirements and administration of this act, shall be absolutely privileged and shall not be made the subject matter or basis for any suit for slander or libel in any court in the state of Mississippi, unless the same be false in fact and maliciously written, sent, delivered, or made for the purpose of causing a denial of benefits under this act."

We are of the opinion that the alleged accusations were not "made in connection with the requirements and administration" of the said act. Nor do we think there would be any basis for our holding that they were "made for the purpose of causing a denial of benefits" under the act. Moreover, we think that the jury was warranted in finding that the accusations were "false in fact and maliciously . . . made."

The granting and refusal of instructions is also assigned as error. Most of these alleged errors were assigned on the former appeal of this case, but they were not deemed of sufficient merit to warrant a discussion of them for the guidance of the trial court after the remand of the cause, since they were granted or refused in accordance with the holding in the Skinner and Blakely cases.

Finally, it is urged that the cause should be reversed because of an alleged improper and inflammatory argument made to the jury by one of the attorneys for the plaintiff. ██ It had been stipulated and agreed that since the defendant Burnie was no longer in the employ of Montgomery Ward and Company and was not available as a witness, his testimony on the former trial could be introduced by either of the parties subject to objection for incompetency, etc. One of the attorneys for the plaintiff read to the jury from the former record his examination of the defendant Burnie, but the attorney for the defendant Montgomery Ward and Company did not read the testimony of the said Burnie given in response to questions asked on behalf of the defendants. In this situation the attorney for the plaintiff in his argument to the jury said, ''This man Burnie, who did not show up at this trial, and whose testimony counsel for Montgomery Ward did not read to you that they took before'' and whereupon an objection to that remark was made, and was overruled, and the attorney for the plaintiff, continuing, said ''We read the questions and answers that were propounded to him by the plaintiff, but the questions and answers that were propounded by Montgomery Ward and Company, which are in the record here, were not read to you.'' An objection was again made and overruled. However, we find no reversible error in these comments, if any error at all.

If, therefore, a remittitur to the extent of $7,500, so as to reduce the judgment of the trial court from the sum

of $15,000 to $7,500, is entered as hereby required, the cause will be affirmed; otherwise, the same will be reversed and remanded for the assessment of damages only.

Affirmed with remittitur.