# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-02145-SCT

*WILLIAM BRIDGES, BY AND THROUGH HIS CONSERVATOR, SHARON BRIDGES, AND SHARON BRIDGES, INDIVIDUALLY*

*v.*

*PARK PLACE ENTERTAINMENT a/k/a PARK PLACE ENTERTAINMENT, INC. a/k/a AND/OR d/b/a THE GRAND CASINO, JOHN DOE AND/OR JANE DOE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/05/2002 |
| TRIAL JUDGE: | HON. LARRY O. LEWIS |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | DANIEL A. SEWARD |
| ATTORNEYS FOR APPELLEE: | TIM WADE HELLEN |
| | D. PACE BRANAN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 12/04/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Aggrieved by the circuit court's judgment granting dismissal pursuant to Miss. R. Civ. P. 12(c), William and Sharon Bridges have appealed to this Court on the issue of whether a first-party tort lawsuit may be brought against the business which furnished intoxicating beverages to an adult plaintiff who voluntarily became intoxicated and was then injured by a third-party. Finding that the circuit court was correct in granting the Grand Casino's motion for judgment on the pleadings and dismissing the suit, we affirm the judgment of the Circuit Court of Tunica County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.      We state the facts as gleaned from the trial court pleadings before us.  William Bridges and his wife, Sharon, were patrons of the Grand Casino[1] on March 8, 1999, in Tunica County, Mississippi. During his stay at the Casino, William gambled and was served alcoholic beverages by the Casino staff. William eventually left the Casino, with the assistance of his wife, and was placed into their car. Sharon drove away on U.S. Highway 61. During their drive home, William attempted to get out of their car; therefore, Sharon pulled over on the shoulder of the highway.  William then exited the vehicle, walked onto Highway 61, and was struck by a car.  As a result of the accident, William suffered a broken neck, broken ribs, fractured scapula, fibula and ankle, pneumonia and brain damage. William was declared incompetent, and Sharon was appointed his conservator.

¶3.      On March 8, 2002, the Bridgeses (plaintiffs) filed a complaint against the Grand Casino alleging that while William was gambling, the Casino and its staff continuously served him alcoholic and/or intoxicating beverages and that William's subsequent injuries were a direct and proximate result of the Casino continuously serving William alcohol after he was visibly intoxicated.

¶4.      On October 4, 2002, the Casino filed a motion for judgment on the pleadings pursuant to Miss. R. Civ. P. 12(c)[2] on the ground that the complaint failed to state a cause of action upon which relief could

---

[1]Park Place Entertainment a/k/a Park Place Entertainment, Inc. operates the Grand Casino in Tunica County.  We will refer to the Grand Casino or simply the Casino.

[2]      **(c) Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56; however, if on such a motion matters outside the

be granted because Mississippi did not recognize a common law right of action for damages against a person who furnishes alcoholic beverages. On December 9, 2002, the trial judge granted the Casino's motion for judgment on the pleadings and dismissed the suit pursuant to Miss. R. Civ. P. 12(c). In his order of dismissal, the trial judge, finding that *Cuevas v. Royal D'Iberville Hotel*, 498 So. 2d 346 (Miss. 1986), was directly on point, held that the "[L]egislature did not intend to impose liability on servers of alcoholic beverages when adult consumers voluntarily consume intoxicating beverages and injure themselves." (citing *Cuevas*, 498 So. 2d at 348-49). On December 26, 2002, the plaintiffs timely filed their appeal.

## DISCUSSION

¶5.     This Court applies a de novo standard when reviewing the granting of a Miss. R. Civ. P. 12(b)(6) or 12(c) motion. *Arnona v. Smith*, 749 So.2d 63, 65-66 (Miss. 1999). As such, we sit in the same position as did the trial court. The scope of review of a motion to dismiss is that the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of her claim. *Brewer v. Burdette*, 768 So. 2d 920, 922 (Miss. 2000). *See also Overstreet v. Merlos*, 570 So.2d 1196, 1197 (Miss. 1990); *Grantham v. Miss. Dep't of Corrections*, 522 So.2d 219, 220 (Miss. 1988).

¶6.     The two statutes at issue in this suit are Miss. Code Ann. §§ 67-1-83 (Rev. 2001) and 67-3-73 (Rev. 2001). Miss. Code Ann. § 67-1-83(1) states:

---

pleadings are not presented, and if the motion is granted, leave to amend
shall be granted in accordance with Rule 15(a).

3

(1) It shall be unlawful for any permittee or other person *to sell or furnish* any alcoholic beverage to any person who is known to be insane or mentally defective, *or to any person who is visibly intoxicated*, or to any person who is known to habitually drink alcoholic beverages to excess, or to any person who is known to be an habitual user of narcotics or other habit-forming drugs. . .

(emphasis added). The provisions of Miss. Code Ann. § 67-3-73 are quoted later in this opinion.

¶7.     The plaintiffs argue that we should overrule our 1986 decision in *Cuevas v. Royal D'Iberville Hotel*, 498 So. 2d 346 (Miss. 1986), wherein this Court affirmed the dismissal of a first party suit against a hotel which allegedly sold alcohol to a visibly intoxicated guest. They contend that because *Cuevas* was a four to four decision with one justice not participating and because it was decided before the rise of the gaming industry, *Cuevas* is now ripe for judicial review. They also argue the language "any person who is visibly intoxicated" found in Miss. Code Ann. § 67-1-83 is meant to encompass everyone for public policy considerations.

¶8.     However, the Casino argues *Cuevas* is still good law which is in line with the majority of other jurisdictions having held there is no cause of action against a business who sells or furnishes alcohol to adults who voluntarily become intoxicated and then injure themselves as a result of that intoxication. The Casino contends that this Court has held that persons who become voluntarily intoxicated and then injure themselves are not in the protected class listed in § 67-1-83. The Casino also argues this claim falls under § 67-3-73(1), not § 67-3-73(4), which states that consumption, not the sale or furnishing of the beverage, is the proximate cause of any injury inflicted by an intoxicated person on himself or another person. The Casino thus opines that William proximately caused his own injuries.

¶9.     While we today unhesitatingly revisit our decision in *Cuevas*, we do so recognizing that notwithstanding the fact that we voted 4-4 to affirm the trial court in *Cuevas*, that decision is still good law and binding precedent. *Harper v. Harper*, 491 So.2d 189, 202 (Miss. 1986) ("Prior decisions of this

4

Court have said that an affirmance by an equally divided court is binding precedent unless and until the same is overruled. ***Montgomery Ward & Co. v. Harland***, 205 Miss. 380, 38 So.2d 771 (1949)"). We are not however without authority to overrule ***Cuevas*** should we deem it appropriate.

¶10.     In ***Cuevas***, the plaintiff, a guest at a hotel, injured herself after she fell over a railing. 498 So. 2d at 346-47. Immediately prior to the accident, Cuevas had been drinking alcoholic beverages in the hotel lobby. ***Id.*** at 347. Cuevas argued the hotel continued to serve her alcoholic beverages after she had become intoxicated and that her intoxicated condition caused or contributed to her injuries.***Id.*** Therefore, Cuevas argued the hotel was liable pursuant to Miss. Code Ann. § 67-1-83. The circuit court dismissed Cuevas's complaint. ***Id.*** at 347. The question before this Court was "whether or not [the hotel] was liable to [Cuevas] for selling and furnishing her intoxicants in violation of § 67-1-83(1), if the intoxication proximately caused or contributed to [Cuevas's] injury." ***Id.***

¶11.     This Court reaffirmed its holding in ***Munford, Inc. v. Peterson***, 368 So. 2d 213 (Miss. 1979), "that the Mississippi law which prohibits the sale of beer or wine to a minor, was adopted for the protection of the general public" and that minors are members of that protected class. ***Cuevas***, 498 So. 2d at 348. This Court further stated:

> We hold that the public, e.g., a third-party class whether minor or adult, is protected under the statute from the negligent acts of an intoxicated person, and has a claim against a person or business furnishing alcoholic beverages in violation of the statute. However, we do not think the legislature intended to impose liability upon a dispenser of intoxicants to *an adult individual, such as appellant here, who voluntarily consumes intoxicants and then, by reason of his inebriated condition, injures himself.* We further hold that such a person as appellant is excluded from the protected class as articulated in ***Munford, Inc. v. Peterson***.

***Cuevas***, 498 So.2d at 348-49 (emphasis added).

¶12. Subsequent to this Court's decision in *Cuevas*, the Legislature enacted a law, codified as Miss. Code Ann. § 67-3-73 (Rev. 2001), which became effective from and after April 3, 1987, which states in its entirety:

> (1) The Mississippi Legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.
>
> (2) Notwithstanding any other law to the contrary, no holder of an alcoholic beverage, beer or light wine permit, or any agent or employee of such holder, who lawfully sells or serves intoxicating beverages to a person who may lawfully purchase such intoxicating beverages, shall be liable to such person or to any other person or to the estate, or survivors of either, for any injury suffered off the licensed premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served.
>
> (3) Notwithstanding any other law to the contrary, no social host who serves or furnishes any intoxicating beverage to a person who may lawfully consume such intoxicating beverage shall be liable to such person or to any other person or to the estate, or survivors of either, for any injury suffered off such social host's premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were served or furnished. No social host who owns, leases or otherwise lawfully occupies a premises on which, in his absence and without his consent, intoxicating beverages are consumed by a person who may lawfully consume such intoxicating beverage shall be liable to such person or to any other person or to the estate, or survivors of either, for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person who consumed the intoxicating beverages.
>
> (4) The limitation of liability provided by this section shall not apply to any person who causes or contributes to the consumption of alcoholic beverages by force or by falsely representing that a beverage contains no alcohol, or to any holder of an alcoholic beverage, beer or light wine permit, or any agent or employee of such holder when it is shown that the person making a purchase of an alcoholic beverage was at the time of such purchase visibly intoxicated.

¶13. The plaintiffs argue this limitation of liability found in § 67-3-73(4) should apply because William was visibly intoxicated when the Casino continued to serve him alcoholic beverages; therefore, he is a

protected member within the statute. The Casino first argues that although § 67-3-73(4) provides an exception to liability for cases involving the *purchase* of alcohol by visibly intoxicated persons, William did not *purchase* any alcohol from the Casino. The Casino also argues that § 67-3-73(1) adopts the common law rule that the consumption of alcoholic beverages is the proximate cause of any injury inflicted by the intoxicated person upon himself or another person, and that, therefore, William proximately caused his own injuries.

¶14. Although § 67-3-73(4) does state "person making a *purchase*," § 67-3-73(2) refers to "sells or serves" intoxicating beverages. Thus we reject the Casino's argument that the legislative intent was to exempt businesses from liability based on a distinction of "making a purchase" as opposed to "being furnished" alcoholic beverages. Therefore, the Casino's argument fails in that regard.

¶15. The language of § 67-3-73 clearly states that the holder of an alcoholic beverage permit shall not be liable if they lawfully sell the intoxicating beverages. However, if the vendor sells intoxicating beverages, or furnishes intoxicating beverages in this case, to a person who is visibly intoxicated, that limitation of liability shall no longer apply. But to whom shall the permit holder be liable?

¶16. We clearly stated in *Cuevas* that we did not perceive the intent of the Legislature as including adults who voluntarily consume alcohol and then injure themselves in the protected class listed in section 67-1-83. Likewise, we do not perceive the Legislature as having intended to include those same individuals in the same protected class of section 67-3-73. In adopting Miss. Code Ann. § 67-3-73, the Legislature had the opportunity to clearly state whether adults who voluntarily consume alcoholic beverages and then injure themselves as a result of that intoxication were members of the protected class thus enabling them to bring suit against vendors who sold or furnished them the alcoholic beverages. However, the Legislature did not take this opportunity; therefore, this Court's holding in *Cuevas* clearly applies to the present case.

> Civil liability, or an accountability akin to it, which imposes some responsibility on a vendor who willfully or carelessly serves alcohol to an intoxicated patron or a minor has much to commend it. However, such a measure should be the result of legislative action rather than judicial interpretation.

*Hinegardner v. Marcor Resorts, L.P.V.*, 108 Nev. 1091, 1096, 844 P.2d 800, 804 (1992).

¶17.    Although this issue of first-party lawsuits against the business which furnishes the intoxicants has not been addressed in Mississippi since *Cuevas*, this issue has been addressed numerous times by many other jurisdictions. A majority of the states which have addressed this issue do not recognize a first party cause of action against a vendor of alcoholic beverages. *See Wright v. Moffitt*, 437 A.2d 554 (Del. 1981) (A patron who purchases alcoholic beverages from tavern operator does not have a cause of action against a vendor for personal injuries resulting from the patron's voluntary intoxication.); *Reed v. Black Caesar's Forge Gourmet Restaurant, Inc.*, 165 So.2d 787, 788 (Fla. Dist. Ct. App. 1964) (Complaint did not state a cause of action because "the death of the plaintiff's husband was the result of his own negligence or his own voluntary act of rendering himself incapable of driving a car rather than the remote act of the defendant in dispensing the liquor[.]"); *Riverside Enters., Inc. v. Rahn*, 171 Ga. App. 674, 320 S.E.2d 595 (1984) (There is no cause of action in favor of an injured adult against the seller of alcoholic beverages when injuries arose from injured person's intoxication, even when the person was noticeably intoxicated at the time the beverages were purchased.); *Bertelmann v. Taas Assocs.*, 69 Haw. 95, 100, 735 P.2d 930, 933 (1987) (Intoxicated persons whom voluntarily consume alcohol can not seek recovery from the bar or tavern which sold them that alcohol if they harm themselves as a result of their voluntary intoxication.); *Davis v. Stinson*, 508 N.E.2d 65 (Ind. Ct. App. 1987) (Intoxicated driver's operation of an automobile upon a public highway constitutes willful and wanton misconduct which bars recovery against the provider of alcohol for injuries to the driver.); *Gregor v. Constitution State Ins.*

***Co.***, 534 So.2d 1340 (La. Ct. App. 1988) (The serving of alcohol to an intoxicated patron is not an affirmative act which increases peril to the intoxicated patron for which a vendor could be held liable.); ***Fisher v. O'Connor's, Inc.***, 53 Md. App. 338, 452 A.2d 1313 (1982) (There is no cause of action against a bar or tavern owner for injuries sustained by a person to whom the bar or tavern owner sold intoxicating beverages.); ***Jackson v. PKM Corp.***, 430 Mich. 262, 422 N.W.2d 657 (1988) (Under Michigan's dramshop act, an intoxicated person has not right to recovery from those who contributed to his intoxication.); ***Trujillo v. Trujillo***, 104 N.M. 379, 721 P.2d 1310 (N.M. Ct. App. 1986) (A patron has neither a common-law nor a statutory claim against a tavern for the negligent sale of alcohol to such patron.); ***Sheehy v. Big Flats Cmty. Day, Inc.***, 73 N.Y.2d 629, 636, 543 N.Y.S.2d 18, 22, 541 N.E.2d 18, 22 (1989) (A common-law cause of action will not be recognized against providers of alcoholic beverages in favor of persons injured as a result of their own voluntary intoxication.); ***Hamm v. Carson City Nugget, Inc.***, 85 Nev. 99, 450 P.2d 358 (1969) (The common law rule of non-liability was adopted; if civil liability were to be imposed upon commercial alcohol vendors, it should be accomplished by "legislative act after appropriate surveys, hearings, and investigations."); ***Sorrells v. M.Y.B. Hospitality Ventures of Asheville***, 332 N.C. 645, 646, 423 S.E.2d 72 (1992) (Recovery in the wrongful death action against the seller of the alcohol by the estate of a twenty-one-year-old who was fatally injured as a result of driving while in a highly intoxicated state was barred.); ***Smith v. The 10th Inning, Inc.***, 49 Ohio St. 3d 289, 551 N.E.2d 1296 (1990) (Intoxicated patron has no cause of action against a liquor permit holder where the injury sustained by the patron off the premises of the permit holder was proximately caused by the patron's own intoxication.); ***Ohio Cas. Ins. Co. v. Todd***, 813 P.2d 508 (Okla. 1991) (Tavern owner has no liability to intoxicated adult who voluntarily consumes alcoholic

9

beverages to excess and sustains injury as result of his intoxication.); ***Tobias v. Sports Club, Inc.***, 332 S.C. 90, 504 S.E.2d 318 (1998) (First party causes of action against a tavern owner by an intoxicated adult predicated on alleged violation of alcohol control statutes are not recognized.); ***Langle v. Kurkul***, 146 Vt. 513, 510 A.2d 1301 (1986) (State's Dram Shop Act provides no remedy to intoxicated person against commercial vendor.); ***Estate of Kelly ex rel. Kelly v. Falin***, 127 Wash. 2d 31, 896 P.2d 1245 (1995) (A commercial establishment owes no duty to obviously intoxicated patron to whom it serves alcohol.).

¶18.     Only a small minority of jurisdictions have extended the liability of the seller of the intoxicants to allow a cause of action in favor of the intoxicated adult. *See **Lyons v. Nasby***, 770 P.2d 1250 (Colo. 1989) (Although voluntary intoxication is a self-indulgent act, a tavern owner owes an intoxicated patron a duty of care not to serve that person alcohol.); ***Boehn v. Kish***, 201 Conn. 385, 517 A.2d 624 (1986) (A cause of action may only be brought against a tavern owner for reckless and wanton conduct.); ***Klingerman v. SOL Corp.***, 505 A.2d 474 (Me. 1986) (An intoxicated person may recover damages on negligence theory from the person who sold him alcoholic beverages while he was visibly intoxicated.); ***Jevning v. Skyline Bar***, 223 Mont. 422, 726 P.2d 326 (1986) (A tavern is not responsible for furnishing a person with alcoholic beverages unless that person is visibly intoxicated.); ***Fulmer v. Timber Inn Restaurant & Lounge, Inc.***, 330 Or. 413, 9 P.3d 710 (2000) (A plaintiff may bring a common-law negligence action against a person or entity that negligently supplied alcohol to the plaintiff when he or she already was visibly intoxicated and the plaintiff suffered injuries caused by that negligent conduct.); ***McDonald v. Marriott Corp.***, 388 Pa. Super. 121, 564 A.2d 1296 (1989) (Under Pennsylvania's dram shop law, in order for to avoid summary judgment, the Plaintiffs must demonstrate a genuine issue

of fact that the Defendant served alcohol to the injured party while he was visibly intoxicated and that it was that conduct that proximately caused the accident.); *Smith v. Sewell*, 858 S.W.2d 350 (Tex. 1993) (Individual who is provided, sold, or served alcoholic beverages in violation of Dram Shop Act and injures himself may assert cause of action against provider of alcoholic beverages.).

¶19. As in *Cuevas* we reiterated our holding in *Munford*, we now reiterate our holding in *Cuevas*. We find that the Legislature did not intend to include adults who voluntarily become intoxicated and subsequently injure themselves as a result of that intoxication as members of the protected class within Miss. Code Ann. § 67-3-73. Therefore, the trial court correctly dismissed the plaintiffs' complaint pursuant to Miss. R. Civ. P. 12(c).

## CONCLUSION

¶20. William Bridges suffered grievous physical and mental injuries. He has been judicially declared incompetent, and his wife is his conservator. The plaintiffs, through counsel, made a fervent argument during oral arguments before this Court, requesting that we revisit *Cuevas* in the wake of the casino industry which has since by legislative enactment moved into our State. However, the gaming industry notwithstanding, our decision in *Cuevas* is still sound law, and it is undergirded by numerous cases from foreign jurisdictions, some of which even have dramshop laws.

¶21. The trial court was correct in granting the motion for judgment on the pleadings and dismissing the lawsuit pursuant to Miss. R. Civ. P. 12(c). In light of Miss. Code Ann. §§ 67-1-83 and 67-3-73, *Cuevas*, which held there is no cause of action against a business who sells or furnishes alcohol to adults who voluntarily become intoxicated and then injure themselves as a result of that intoxication, continues to be binding authority and was correctly followed by the trial court. Therefore, we affirm the judgment of the Circuit Court of Tunica County.

¶22.   **AFFIRMED.**

   **SMITH, P.J., WALLER, COBB, EASLEY AND GRAVES, JJ., CONCUR. PITTMAN, C.J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

   **McRAE, PRESIDING JUSTICE, DISSENTING:**

¶23.   While I neither endorse nor reject the statement of law provided by the majority, I find fault with the manner in which it applies that statement of law to the facts of this case. The majority states those who become voluntarily intoxicated and injure themselves as a result of this intoxication should not be able to pursue a cause of action against those who merely sold or furnished the alcohol. However, in this case the complaint is void of any admission that the plaintiff was intoxicated voluntarily, and no such allegation is made in the defendant's answer. In addition, the trial court, in reaching beyond the pleadings in its determination of the defendant's motion, turned it into one for summary judgment. Because there is a genuine issue of material fact as to the voluntariness of the plaintiff's intoxication, I would reverse the judgment of the trial court and remand this case for further proceedings. Accordingly, I dissent.

¶24.   Under Miss. Code Ann. § 67-1-83 (Rev. 2001), the plaintiff must show that he was visibly intoxicated and that the defendant served him while he was visibly intoxicated. However, the majority has held today that the defendant may rebut with our equally divided decision in *Cuevas v. Royal D'Iberville Hotel,* 498 So.2d 346 (Miss. 1986), that those who become voluntarily intoxicated and injure themselves as a result of this intoxication should not be able to pursue a cause of action against those who merely sold or furnished the alcohol.

¶25.   In this case, the circuit court granted a judgment on the pleadings because it found that the plaintiff was voluntarily intoxicated. However, the voluntariness of the plaintiff's intoxication was not addressed

12

in either of the pleadings. It was mentioned for the first time in the defendant's memorandum in support of motion for judgment on the pleadings. Thus, the circuit court wandered beyond the pleadings in ruling on the motion. Therefore, as the majority points out in a footnote, the defendant's motion should have been handled in accordance with M.R.C.P. 56,[3] which it was not.

¶26.    In addition, there is a genuine issue of material fact as to the voluntariness of the plaintiff's intoxication.   By removing all clocks, creating huge open spaces with absolutely no windows and surrounding the consumer with constant  stimulations of light and sound, casinos strive to create an environment where time goes by unnoticed.  See George Ritzer & Todd Stillman, *The Modern Las Vegas Casino-Hotel: The Paradigmatic New Means of Consumption*, 4 M@n@gement, page no. 3 (2001). Calling casino-hotels "cathedrals of consumption," casinos are purposefully designed in order to make the consumer stay and gamble more than they normally would and longer than they intend. *Id*. As the plaintiff notes in the complaint,  the whole time that the consumer is in the midst of this manipulated environment, he is also constantly bombarded with free alcohol.  This is how casinos make their money. By removing inhibitions and altering consumers' concepts of time, they urge and entice the customer to stay longer and gamble more.  There is even an elaborate system of "comps" which reward those who stay longer and gamble more. *Id*.

¶27.    This is not to say that casinos are evil or are totally to blame.  While they figuratively shove alcohol down their customers' throats, no one here argues that such is done literally.  However, questions begin to emerge.  First, when casinos set out a deliberate plan such as this, do they not at some point owe a duty

---

[3] There is also an issue as to whether the affirmative defense of voluntary intoxication was raised in the answer as required by M.R.C.P. 8(c), as the defendant pled that the plaintiff was contributorily negligent, but never specifically alleged that the intoxication was voluntary. It should also be noted that the defendant never alleged that there was no genuine issue of material fact and thus, cannot be said to have met its burden under M.R.C.P. 56.

to those customers whom they have manipulated? Second, do they also not take at least _some_ part of fault as contributing to the customer's intoxicated state through this manipulation.

¶28.    However, the ultimate question is whether this manipulation of the customer and his environment renders his subsequent intoxication completely voluntary within the law? By considering information outside of the pleadings, the trial court effectively turned this inquiry into one of the propriety of summary judgment. In addition, I reiterate that this alleged voluntary intoxication should have been pled as an affirmative defense.  Notwithstanding, there is a genuine issue of material fact as to the voluntariness of the plaintiff's intoxication and therefore, summary judgment was inappropriate. I would reverse the judgment of the trial court and remand this case for further proceedings.

¶29.    For these reasons, I dissent.